**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TIM CARR** individually and on behalf of other customers | Case No. 3:20-cv-01349-SI |
| Plaintiff | **RESPONSE TO MOTION TO COMPEL ARBITRATION** |
| vs | Oral Argument Requested |
| **WALGREEN CO.** | Demand for Jury Trial |
| Defendant | |

**RESPONSE TO MOTION** – Page 1 of 30

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 3

INTRODUCTION ..................................................................................... 6

FACTUAL BACKGROUND ...................................................................... 7

LEGAL STANDARDS .............................................................................. 8

LEGAL MEMORANDUM ....................................................................... 10

    1.  Plaintiff did not manifest assent to arbitration .......................... 10

    2.  Plaintiff's claim is not within the scope of the agreement ......... 20

CONCLUSION ......................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Adair Homes, Inc. v. Jarrell*,
    59 Or. App. 80 (1982) ..................................................................... 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ........................................................................ 9

*Bennett v. Farmers Ins. Co. of Or.*,
    332 Or. 138 (2001) ........................................................................ 13

*Burgess v. Qwest Corp.*,
    546 F. Supp. 2d 1117 (D. Or. 2008) ............................................. 14

*Campos v. Bluestem Brands, Inc.*,
    No. 3:15-CV-00629-SI, 2015 U.S. Dist. LEXIS 132538 (D. Or.
    Sept. 30, 2015) ............................................................................... 9

*Campos v. Bluestem Brands, Inc.*,
    No. 3:15-CV-00629-SI, 2016 U.S. Dist. LEXIS 7592 (D. Or. Jan.
    22, 2016) ........................................................................................ 10

*Card v. Wells Fargo Bank, N.A.*,
    No. 3:19-cv-1515-SI, 2020 U.S. Dist. LEXIS 45117 (D. Or. Mar.
    16, 2020) ........................................................................................ 20

*Cavlovic v. J.C. Penney Corp.*,
    884 F.3d 1051 (10th Cir. 2018) ..................................................... 26

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ........................................................ 8

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ........................................................ 8

*Citibank S.D. N.A. v. Santoro*,
    210 Or. App. 344 (2006) ......................................................... 13, 19

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................ 8

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*,
    868 F. Supp. 2d 1042 (D. Or. 2011) ............................................. 13

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    495 F.3d 1062 (9th Cir. 2007) ...................................................... 11

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ...................................................................... 21

*Estate of Athon v. Conseco Fin. Serv. Corp.*,
    88 S.W.3d 26 (Mo. Ct. App. 2002) .............................................. 27

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................... 9

*Gamble v. New Eng. Auto Fin., Inc.*,
    735 F. App'x 664 (11th Cir. 2018) .............................................. 26

*Gilberto v. Walgreen Co.*,
    No. 3:18-cv-01003-AC, 2020 US Dist LEXIS 66647) (D. Or. Apr.
    15, 2020) ...................................................................................... 7

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) .................................................................... 21

*Hemispherx Biopharma, Inc. v. Johannesberg Consol. Invs.*,
    553 F.3d 1351 (11th Cir. 2008) .................................................. 27

*In re Jiffy Lube Int'l, Inc.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...................................... 23

*Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*,
    201 Or. App. 568 (2005) ............................................................ 12

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ....................................................... 9

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*,
    501 U.S. 190 (1991) .................................................................... 28

*Martin v. Comcast of Cal./Colo./Fla./Or., Inc.*,
    209 Or. App. 82 (2006) .............................................................. 13

*Missaghi v. Coca-Cola Co.*,
    No. CV 12-07472 SJO (Ex), 2013 WL 12114765, 2013 U.S. Dist.
    LEXIS 202919 (C.D. Cal. Jan. 2, 2013) ..................................... 26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................... 8

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................... 10

*Revitch v. DIRECTV, LLC*,
    977 F.3d 713 (9th Cir. 2020) ..................................................... 25

*Smith v. Steinkamp*,
    318 F.3d 775 (7th Cir. 2003) ..................................................... 22

*Staley v. Taylor*,
    165 Or. App. 256 (2000) ............................................................ 12

**RESPONSE TO MOTION** – Page 4 of 30

*Stover v. Experian Holdings, Inc.*,
    No. 19-55204, U.S. App. LEXIS 33176 (9th Cir. Oct. 21, 2020).10

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991)........................................................9

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
    42 F.3d 1292 (9th Cir. 1994)......................................................20

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017)......................................................25

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996)......................................................21

*Wexler v. AT&T Corp.*,
    211 F. Supp. 3d 500 (E.D.N.Y. 2016) .......................................23

## Statutes

9 U.S.C. § 2................................................................................8, 23

9 U.S.C. § 4........................................................................8, 10, 29

ORS 646.608(1)(s) ...............................................................25, 27

## Other Authorities

Restatement (Second) of Contracts § 17(1) (1981) ................................12

## INTRODUCTION

In its motion to compel arbitration, Walgreen argues that plaintiff objectively manifested assent to a 2020 modified online version of its Balance Rewards program terms and conditions, which contained an arbitration provision. Doc. 9. Walgreen argues that because the arbitration provision encompasses plaintiff's claims, the Court must compel arbitration and dismiss this action. *Id.*

Of course, the whole point of an arbitration provision is lost, if you keep it a secret.

Plaintiff opposes Walgreen's motion to compel because plaintiff did not manifest his assent to Walgreen's arbitration provision, and even if he did, a plain reading of the agreement unambiguously indicates that plaintiff's claims are not within the scope of the provision.

As argued below, Walgreen has not met, and cannot meet, its burden to compel arbitration in this case, and there is no genuine issue of fact to be decided by a jury. Because there is no valid agreement requiring plaintiff to arbitrate his claims for this Court to enforce, Walgreen's motion to compel arbitration and to dismiss this action should be denied. If the motion to compel is not denied based on the factual record, plaintiff respectfully requests a trial by jury.

**RESPONSE TO MOTION** – Page 6 of 30

## FACTUAL BACKGROUND

Plaintiff seeks compensation for Walgreen's alleged violation of Oregon's Unlawful Trade Practices Act and unjust enrichment based on allegations that Walgreen knowingly misrepresented the cost of certain consumer goods in its advertised prices. Doc. 1. During plaintiff's interactions with Walgreen, Walgreen's manager allegedly told plaintiff that thousands of other people were also overcharged, prompting plaintiff to file this case as a putative class action. Carr Decl. ¶ 1.

As alleged in his declaration, plaintiff never received any version of Walgreen's Balance Rewards program terms and conditions, never saw any updates or information about arbitration, and never agreed to arbitration with Walgreen. *Id.* at ¶¶ 3-5.

Walgreen spends a portion of its motion attacking the merits of plaintiff's substantive claims, plaintiff's motives, and even plaintiff's character.[1] Plaintiff will not respond in kind, except to refute the allegations made against him. *Id.* at ¶¶ 1-2.

---

[1] This is not the first Oregon class action where Walgreen used an early dispositive motion as a vehicle to comment on the evidence and attack a plaintiff's motives. *See, e.g., Gilberto v. Walgreen Co.*, No. 3:18-cv-01003-AC, 2020 US Dist LEXIS 66647 (D. Or. Apr. 15, 2020). In its motions to dismiss resulting in the opinion above, Walgreen repeatedly commented on the evidence, and accused the plaintiff in *Gilberto* of "acting fast" by "rushing into court with a class action lawsuit" to obtain a "multimillion-dollar windfall", and forum shopping. Doc. 8; Doc. 13. Based on the dates in its motion to compel in this case, it appears Walgreen began attempting to add arbitration provisions and class action waivers to its Balance Rewards program while it was litigating the *Gilberto* case.

**RESPONSE TO MOTION** – Page 7 of 30

## LEGAL STANDARDS

The Federal Arbitration Act (FAA) applies to all contracts involving interstate commerce and provides that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2).

A court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4. When "deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, the "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question of whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The validity of an arbitration agreement remains "a matter of contract and a party cannot be required to submit to

**RESPONSE TO MOTION** – Page 8 of 30

arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

Courts generally "apply ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate a dispute. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "In deciding whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard" using "ordinary state-law principles that govern the formation of contracts." *Campos v. Bluestem Brands, Inc.*, No. 3:15-CV-00629-SI, 2015 U.S. Dist. LEXIS 132538, at *3-4 (D. Or. Sept. 30, 2015); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (holding that courts should decide as a matter of law that an agreement to arbitrate existed only if there is no genuine issue of fact concerning the formation of the agreement).

A court must give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

**RESPONSE TO MOTION** – Page 9 of 30

**LEGAL MEMORANDUM**

**1. Plaintiff did not manifest assent to arbitration**

As the party seeking to compel arbitration and "alleging the existence of a contract, [Walgreen] has the burden to prove each element of a valid contract—including mutual assent." *Stover v. Experian Holdings, Inc.*, No. 19-55204, U.S. App. LEXIS 33176, at *9 (9th Cir. Oct. 21, 2020).

Assent to an agreement, including an agreement to arbitrate, can be manifested either expressly or impliedly. Express assent is typically evidenced by a signature or other sufficient means of electronic acknowledgment. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-77 (9th Cir. 2014) (describing manifestation of assent to "browsewrap" and "clickwrap" agreements formed through internet websites). Implied assent is based on actual notice that specified action will manifest acceptance to an agreement followed by the occurrence of the action. *See, e.g.*, *Campos v. Bluestem Brands, Inc.*, No. 3:15-CV-00629-SI, 2016 U.S. Dist. LEXIS 7592, at *29-30 (D. Or. Jan. 22, 2016) (finding after an evidentiary hearing that plaintiff's use of an account after receiving the defendant's agreement providing that subsequent use of that account would equate to acceptance of the terms and conditions in the agreement, including arbitration, manifested plaintiff's assent to be bound by the agreement).

**RESPONSE TO MOTION** – Page 10 of 30

In the context of a modification of an arbitration agreement, in *Douglas v. U.S. District Court for Central District of California*, the Ninth Circuit held that the district court clearly erred in concluding that "a service provider may change the terms of its service contract by merely posting a revised contract on its website" without providing customers with additional notice of the changes. 495 F.3d 1062, 1065 (9th Cir. 2007). The court held that "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side," and that even if a customer's continued use of a service could be considered assent to revised terms, "such assent can only be inferred after [that customer] received proper notice of the proposed changes." *Id*. at 1066.

Just a few months ago, in *Stover* the Ninth Circuit explained "that nothing in *Douglas* suggests that mere inquiry notice of changed terms is enough to bind the parties to them." U.S. App. LEXIS 33176, at *8-9. The court found that plaintiff "had no obligation to investigate whether [the defendant] issued new terms without providing notice to her that it had done so," because "the opposite rule would lead to absurd results: contract drafters who included a change-of-terms provision would be permitted to bind individuals daily, or even hourly, to subsequent changes in the terms." *Id*. at *9. The Ninth Circuit adopted the following rule: "in order for changes in terms to be binding pursuant

to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." *Id.*

Oregon contract law governs the questions of whether Walgreen has met its burden to prove that plaintiff manifested his assent to arbitrate his claims.[2] In Oregon, "[w]hether a contract existed is a question of law." *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 577 (2005). Parties create an enforceable agreement through "a manifestation of mutual assent to the exchange and a consideration. . . . 'The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.'" *Id.* at 578 (quoting Restatement (Second) of Contracts § 17(1) (1981)).

To determine if an agreement was formed, courts look only to "the parties' objective manifestations of intent, as evidenced by their communications and acts." *Id.* A party may manifest their assent through conduct rather than words. *See Staley v. Taylor*, 165 Or. App. 256, 262 n.6 (2000) ("Frequently, implied-in-fact contracts arise because an accepted course of conduct would permit a reasonable juror to find that the parties understood that their acts were sufficient to

---

[2] *See Nguyen,* 763 F.3d at 1175 (noting that a federal court sitting in diversity looks to the law of the forum state when making a choice of law determination).

**RESPONSE TO MOTION** – Page 12 of 30

manifest an agreement."). However, a party must act in a way that "clearly manifested an objective intent" to be bound by the agreement. *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011).

In *Citibank South Dakota N.A. v. Santoro*, the credit card agreement at issue provided that the card user would be bound to the terms of the agreement unless the account was cancelled within 30 days or the credit card is not used. 210 Or. App. 344, 348 (2006). The court held that because the plaintiff did "not dispute that he received the credit card at his request, that he did not cancel the credit card account, and that he used the credit card, the plaintiff his manifested assent to the credit card agreement." *Id*. at 349.

Under Oregon law, conduct may also manifest acquiescence to a modification of an agreement. *See Adair Homes, Inc. v. Jarrell*, 59 Or. App. 80, 85 (1982). However, modification requires mutual assent and must be supported by consideration. *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 148, (2001). Moreover, "when assent to a modification occurs by conduct, that conduct must be 'unequivocal.'" *Martin v. Comcast of Cal./Colo./Fla./Or., Inc.*, 209 Or. App. 82, 97 (2006).

In *Martin,* the putative class plaintiffs filed suit seeking relief for Comcast's allegedly illegal billing practices. *Id*. at 85. Comcast moved to compel arbitration of the plaintiffs' claims, arguing that the plaintiffs

**RESPONSE TO MOTION** – Page 13 of 30

manifested their assent to modification of their agreements including an arbitration clause it included in bill stuffers it sent to the plaintiffs. *Id*. at 95-97. The court upheld the trial court's ruling that Comcast failed to meet its burden that any of the plaintiffs manifested assent to Comcast's arbitration provision because "a subscriber could easily have continued using Comcast's service without ever being aware of the arbitration clause. Indeed, the lead plaintiff, Martin, averred that she was unaware of receiving the notices that purported to change her cable subscription. Evidence, then, supports the court's finding that nonaction did not signify acceptance of the arbitration term." *Id*. at 97.

In *Burgess v. Qwest Corp.*, a consumer filed suit against Qwest for unlawfully attempting to collect a debt from her after she cancelled her service. 546 F. Supp. 2d 1117, 1118-19 (D. Or. 2008). Qwest attempted to compel arbitration based upon the plaintiff's alleged assent to an arbitration clause which provided that using, enrolling in, activating, or paying for Qwest's services or equipment would manifest agreement to Qwest's terms and conditions, including arbitration. *Id*. at 1120-21. The plaintiff testified that she did not read or agree to the terms and that she was not made aware of their existence. *Id*. at 1121. Relying in part on *Martin*, the court found that Qwest had not satisfied its burden to prove that the plaintiff manifested assent to arbitration because Qwest offered "no evidence, such as a signed agreement or

**RESPONSE TO MOTION** – Page 14 of 30

documented communications with plaintiff, to establish that plaintiff was aware of the terms of the Internet Agreement and agreed to them." *Id.*

In finding that the defendant did meet its burden to prove that the plaintiff assented to the defendant's arbitration clause through subsequent use of her account after receiving the applicable agreement, in *Campos* this Court distinguished *Martin* and *Burgess,* finding that

> *Martin* and *Burgess* are both distinguishable from Ms. Campos's case. In *Martin*, the plaintiffs' lack of awareness of the agreement became relevant only in the total absence of any affirmative assent to the agreement. The plaintiffs used their cable accounts before receiving the agreement and continued their use, unchanged, after purportedly receiving the agreements. This non-action could not objectively manifest assent. The defendant also presented no specific proof that the plaintiffs did, in fact, receive the agreement. In contrast, Ms. Campos affirmatively used her credit account for the first time after receiving the Agreement, and her receipt of the Agreement was established with specific evidence. Similarly, the presence of specific evidence, rather than "conclusory statements," that Ms. Campos received the Agreement before using her credit account distinguishes her case from *Burgess.*

*Campos*, 2016 U.S. Dist. LEXIS 7592, at *28.

Here, *Martin* and *Burgess* cannot be so distinguished. Therefore, the outcome must be the same—Walgreen's motion to compel arbitration must be denied. In fact, the "evidence" proffered by Walgreen to satisfy its burden regarding assent is significantly more deficient than the evidence proffered in *Martin* and *Burgess.* Analogous to *Martin* and *Burgess*, plaintiff declares that he never "received or viewed any version

**RESPONSE TO MOTION** – Page 15 of 30

of Walgreen's Balance Rewards Terms and Conditions, including the versions of the Terms and Conditions Walgreen has filed in this case as Exhibit 2 and Exhibit 3 to the Declaration of Patrick Mclean in Support of Defendant's Motion to Compel Arbitration, on Walgreen's website or otherwise." Carr Decl. ¶ 3. Plaintiff also declares that he "never saw any updates or information about arbitration on Walgreen's website," and that he "never saw any updates or information about arbitration or any terms and conditions while inside Walgreen's stores." *Id*. at ¶ 4. Plaintiff further declares that he "never agreed to arbitration with Walgreen, either verbally, in writing, on the Internet, in Walgreen's stores, or otherwise," that he "never signed an arbitration agreement with Walgreen, ever," and that he "never even knew about any Walgreen arbitration agreement until after [he] filed this lawsuit." *Id*. at ¶ 5.

Walgreen argues that plaintiff did in fact enter into a valid and enforceable agreement to arbitrate his claim. Walgreen's theory is that plaintiff first impliedly assented to the 2014 version of its T&C, which did not contain any arbitration provision, by using a Walgreen's Balance Rewards account set up by his wife when he made purchases. Walgreen's sole "evidence" that plaintiff was made aware of the 2014 T&C is that he and his wife somehow "joined the Balance Rewards program on June 19, 2014." Doc. 9 at 6; *see also* Doc. 10 at ¶ 5 ("According to Walgreens' records, the Balance Rewards account referenced on

**RESPONSE TO MOTION** – Page 16 of 30

<u>Exhibit 1</u> and used in connection with the purchases at issue in this lawsuit is registered to Rosanna Carr, with an associated email address of tim@timcarr.com. The Carrs became Balance Reward members on or about June 19, 2014."). Critically, Walgreen does not specify how plaintiff (or his wife) became members or how and when they would have been made aware of the 2014 T&C, in order for plaintiff's subsequent use of the account to have manifested his assent to the 2014 T&C. According to Walgreen, because plaintiff "continued to participate in the Balance Rewards program," after Walgreen unilaterally modified its T&C to include a mandatory arbitration provision in 2020, plaintiff also manifested his assent to this 2020 modified version of the T&C. Doc. 9 at 7.

Walgreen's arguments and its motion must fail because the evidence does not raise any genuine issue of fact regarding plaintiff's assent to its 2014 T&C, let alone the unilateral change in terms including mandatory arbitration in its 2020 T&C. Critically, Walgreen offers no evidence that plaintiff was ever made aware of any version of its T&C, or that he was even made aware that he should visit Walgreen's website to read the T&C before using the rewards program. The fact that plaintiff used his wife's rewards account when he made purchases at Walgreen, and that Walgreen has plaintiff's email address in its records, is not evidence that plaintiff was ever made aware of the 2014

**RESPONSE TO MOTION** – Page 17 of 30

or 2020 T&C, especially when plaintiff affirmatively denies ever receiving or viewing any version of Walgreen's T&C or any arbitration provision.

As in *Burgess,* Walgreen "provides no evidence, such as a signed agreement or documented communications with plaintiff, to establish that plaintiff was aware of the terms of the [T&Cs] and agreed to them." *Burgess*, 546 F. Supp. 2d at 1121. And as in *Martin*, plaintiff "could easily have continued using [Walgreen's] service without ever being aware of the arbitration clause" in the 2020 T&C. *Martin*, 209 Or. App. at 97. Because plaintiff was never made aware of, or assented to, the 2014 T&C, he could not have manifested assent to the "modified" 2020 T&C by using the account after Walgreen's 2020 unilateral modifications.

And even *if* plaintiff had assented to the 2014 T&C and could be found to be on notice that the terms of the agreement could be unilaterally altered by Walgreen at any time, the rule announced in *Stover*—which should have the same force under an Oregon law analysis—would preclude a finding of assent to the 2020 T&C without additional notice to plaintiff of the important changes. "[M]ere inquiry notice of changed terms is [not] enough to bind the parties to them" and plaintiff "had no obligation to investigate whether [Walgreen] issued new terms without providing notice to [him] that it had done so."

**RESPONSE TO MOTION** – Page 18 of 30

*Stover*, U.S. App. LEXIS 33176, at *8-9. It would be "absurd" to expect consumers to continuously monitor Walgreen's website to ensure that they were not agreeing to material changes in an agreement by making purchases. *Id.* at *9. Especially when the material change-in-terms involves waiver of an important Constitutional right[3]. Nor was there any additional consideration given for this unilateral and material modification as required under Oregon law. *See Bennett*, 332 Or. at 148.

Contrary to *Campos* and *Santoro*, especially given plaintiff's declaration, here no reasonable juror could find that plaintiff received, or was made aware of, Walgreen's 2020 T&C or the arbitration agreement contained within it. If plaintiff was not made aware of the T&C, he could not have unambiguously manifested his assent to be bound by any of those terms by using the account.

Because Walgreen "has not sufficiently proven that [p]laintiff received and was aware of the terms of any . . . [a]greement purportedly provided to him," and because there is no "genuine dispute of material fact regarding whether a valid arbitration agreement exists," there is no need for an evidentiary hearing or jury trial on this issue. *Card v. Wells*

---

[3] *See Campos*, 2016 U.S. Dist. LEXIS 7592, at *9 n.1. ("The Court notes that the right to a trial by jury is the only right that appears in both the text of the Constitution, U.S. Const. art. III, § 2, and the Bill of Rights, U.S. Const. amend. VII. Arbitration restricts a party's right to a trial by jury, and consent to such a process should not casually be presumed or slyly be obtained.").

**RESPONSE TO MOTION** – Page 19 of 30

*Fargo Bank, N.A.*, No. 3:19-cv-1515-SI, 2020 U.S. Dist. LEXIS 45117, at *19 (D. Or. Mar. 16, 2020). Because plaintiff "cannot be required to submit to arbitration any dispute which he has not agreed so to submit," Walgreen's motion to compel arbitration must be denied. *AT&T*, 475 U.S. at 648.

### 2. Plaintiff's claim is not within the scope of the agreement

Because plaintiff did not manifest assent to Walgreen's 2020 T&C, there is no arbitration agreement to enforce. However, even if plaintiff had manifested assent to the 2020 T&C, his UTPA claim is not within the scope of the arbitration provision in that agreement.

"Although [a] contract provides that [state] law will govern the contract's construction, the scope of the arbitration clause is governed by federal law." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). The U.S. Supreme Court has generally noted that there is a "federal policy favoring arbitration" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. However, the Supreme Court has also clarified that courts "must look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement," and that courts should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring

**RESPONSE TO MOTION** – Page 20 of 30

arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302-03 (2010) (explaining that the federal policy favoring arbitration "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts," and noting that "we have never held that this policy overrides the principle that a court may submit to arbitration only those disputes . . . that the parties have agreed to submit," "[n]or have we held that courts may use policy considerations as a substitute for party agreement." (internal quotation marks and citations omitted)).

Therefore, according to the Supreme Court's directives, the presumption that a particular dispute is within the scope of an arbitration agreement must only be applied when there is sufficient ambiguity in the agreement. *See also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (noting that in interpreting arbitration agreements courts should give "due regard to the federal policy in favor of arbitration by resolving *ambiguities* as to the scope of arbitration in favor of arbitration" (emphasis added)). Here, there is no ambiguity—plaintiff's UTPA claim has no relation to Walgreen's 2020 T&C or its rewards program.

**RESPONSE TO MOTION** – Page 21 of 30

The arbitration clause that Walgreen unilaterally added to the 2020 version of its T&C provides:

> If a dispute ever arises between Member and Company relating in any way to the Agreement or the Company's Balance Rewards Program, including claims based on state or federal statutes, Member should first contact Company. If the matter cannot be resolved informally, Member and Company each agree that any and all disputes or claims that have arisen or may arise between Member and Company shall be resolved exclusively through final and binding arbitration, rather than in court, except that Member may assert claims in small claims court, if Member's claims qualify ("Agreement to Arbitrate").

Doc. 10-1 at 11.

The key language limiting the scope of this arbitration clause is that it only encompasses disputes relating to the "Agreement" (the T&C) itself or to Walgreen's "Balance Rewards Program". Given the language that precedes it, the "any and all disputes or claims" is qualified to mean disputes "relating in any way to" the T&C or the rewards program.

Otherwise, a reading of the "any and all disputes" language as being untethered to the "relating to" the agreement or the rewards program would render the arbitration provision fatally overbroad, unconscionable, and unenforceable. *See, e.g.*, *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (holding that "absurd results ensue" when arbitration provisions "are read as standing free from any [underlying] agreement," but avoiding unconscionability by limiting the provision to relate to the parties' agreement); *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp.

**RESPONSE TO MOTION** – Page 22 of 30

2d 1253, 1262-63 (S.D. Cal. 2012) (finding the "incredibly broad" language of the arbitration provision applying to "any and all disputes" between the parties as clearly unconscionable, and refusing to rewrite the agreement "so as to contain a typical limitation, such as that the dispute at issue must 'arise out of or relate to' the contract"); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 502-05 (E.D.N.Y. 2016) (holding arbitration provision was unconscionably "broad" because it "purports to require arbitration of claims against third parties" and "is not limited to disputes concerning" the underlying agreement, but characterizing refusal to enforce the provision as a question of contract formation rather than unconscionability); 9 U.S.C. § 2 (requiring that the controversy "aris[e] out of the contract between the parties").

A review of Walgreen's 2020 T&C indicates it exclusively deals with the rewards program: including, earning points under the rewards program; redeeming points under the rewards program; and the use of personal information in furtherance of the rewards program. Doc. 10-1 at 7-12. For example, the following opening paragraphs of the T&C make clear that the agreement only concerns the rewards program.

> Balance® Rewards is a loyalty program offered by Walgreen Co. to its customers (also referred to as "the Program"). These terms and conditions form the agreement (the "Agreement") between each customer that participates in Balance Rewards (referred to as a "Member") and Walgreen Co. and its participating affiliates and subsidiaries (collectively "Company") *with respect to the Program*.

**RESPONSE TO MOTION** – Page 23 of 30

....
By completing the enrollment process and participating in
Balance Rewards, Member agrees to the terms and
conditions, rules, regulations, policies, and procedures *of
the Program*...
....
Each Member is responsible for remaining knowledgeable
*about the Program terms and conditions.*
....
Walgreen Co. reserves the right to change the terms or
conditions of the Program or terminate the Program or
Member's membership in the Program at any time, for any
reason, without prior written notice. Communications
about Balance Rewards, including material *changes to the
Program,* will be posted on Walgreens.com/Balance.

*Id.* at 7 (emphases added).

Walgreen asserts that "[t]here [is] no argument that this dispute
is not 'relating in any way' to the Balance Rewards program, or that it
is not included within the 'any and all disputes' that Plaintiff agreed to
arbitrate with Walgreen as a condition of participating in the benefits of
the Balance Rewards program." Doc. 9 at 9. Walgreen is incorrect. There
is more than argument that plaintiff's UTPA claim is not encompassed
by the 2020 T&C—it is unambiguously so.

As explained *supra*, to be enforceable, the "any and all disputes"
language must be tethered to disputes "relating" to the T&C or the
rewards program. And although "relating to" is considered to be very
broad in scope, even "'related to' marks a boundary by indicating some
direct relationship; otherwise the term would stretch to the horizon and
have no limiting purpose in violation of the cannon of *verba cum effectu*

*sunt accipienda.*" *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017) (internal quotation marks and citation omitted).

In the complaint, plaintiff alleges that

Walgreen violated ORS 646.608(1)(s) of the UTPA when in the course of its business it made false or misleading representations of fact about the true and total cost of consumer goods by failing to disclose its hidden overcharges in the prices it advertised on its shelves, although Walgreen knew it charged more than the advertised cost at its registers, causing plaintiff ascertainable loss in the amount of the illegal 80 cent overcharge Walgreen collected from him.

Doc. 1 at ¶18.

When "look[ing] to the reasonable expectation of the parties at the time of contract," no reasonable person would expect that by participating in a rewards program and agreeing to be bound by this T&C that they were waiving their right to a jury and agreeing to arbitrate claims against Walgreen that are unrelated to the T&C or the rewards program itself. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020). Walgreen's misrepresentation and omission about the cost of goods it sold to plaintiff does not bear a "direct relationship" to the T&C or rewards program merely because Walgreen tracked and recorded this particular sale in its rewards program system.

For example, plaintiff does not assert that Walgreen violated the UTPA by misrepresenting any aspect of the rewards program, by not

**RESPONSE TO MOTION** – Page 25 of 30

properly allocating him points under the rewards program, by breaching the T&C in any way, or by engaging in any conduct that is specifically contemplated by the T&C. *See, e.g.*, *Missaghi v. Coca-Cola Co.*, No. CV 12-07472 SJO (Ex), 2013 WL 12114765, 2013 U.S. Dist. LEXIS 202919, at *11 (C.D. Cal. Jan. 2, 2013) (finding that plaintiff's Telephone Consumer Protection Act claims were connected to the "My Coke Rewards" program, and thus within the scope of the arbitration agreement, because the terms of the program specifically authorized the sending of the allegedly illegal text messages as part of the program).

Plaintiff does not rely on the T&C or any terms governing the rewards program in his complaint because his claim has nothing to do with either—Walgreen's alleged acts and omissions violate the UTPA whether or not plaintiff's particular transactions were tracked in Walgreen's rewards program system. *See, e.g., Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1060 (10th Cir. 2018) ("with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship" (internal quotation marks omitted)); *Gamble v. New Eng. Auto Fin., Inc.*, 735 F. App'x 664, 667 (11th Cir. 2018) ("Put differently, NEAF could have violated the [Telephone Consumer Protection Act], and Ms. Gamble could have brought a lawsuit against NEAF for those violations, without there ever having been a contract (in this case the Loan Agreement) between the two parties."); *Estate of*

**RESPONSE TO MOTION** – Page 26 of 30

*Athon v. Conseco Fin. Serv. Corp.*, 88 S.W.3d 26, 30 (Mo. Ct. App. 2002) ("[F]or a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract. Where, however, a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not compelled.").

Instead, Walgreen's alleged violation of ORS 646.608(1)(s) occurred prior to the sale of the goods, when it failed "to disclose its hidden overcharges in the prices it advertised on its shelves." Doc. 1 at ¶ 18. Plaintiff seeks relief for Walgreen's violation of a consumer protection statute that imposes an independent legal duty upon Walgreen to not subject Oregonians to unlawful trade practices. *See, e.g.*, *Tracer*, 42 F.3d 1292 (claim for misappropriation of trade secrets arose from legal duty that was independent of the parties' licensing agreement and was not subject to arbitration). Walgreen's UTPA violations based on its false price advertising is far from being a foreseeable result of using Walgreen's rewards program to log points and (allegedly) agreeing to a T&C exclusively dealing with that rewards program. *See Hemispherx Biopharma, Inc. v. Johannesberg Consol. Invs.*, 553 F.3d 1351, 1367 (11th Cir. 2008) (looking to whether the dispute was a "foreseeable result" of the performance of the contract).

**RESPONSE TO MOTION** – Page 27 of 30

As the Supreme Court explained in *Litton Financial Printing Division, a Division of Litton Business System, Inc. v. NLRB*, "[t]he object of an arbitration clause is to implement a contract, not to transcend it." 501 U.S. 190, 205 (1991). Therefore, even if somehow plaintiff unwittingly, without notice, entered into a binding and enforceable agreement with Walgreen to waive his right to relief in this Court and to a jury trial, the scope of Walgreen's arbitration clause unambiguously does not encompass plaintiff's UTPA claim, which is the subject of this lawsuit.

## CONCLUSION

For all these reasons, Walgreen's motion to compel plaintiff's claims to arbitration should be denied. In the event that the Court finds there is a genuine issue of material fact as to whether there is a valid and enforceable agreement to arbitrate plaintiff's claims, plaintiff respectfully requests a trial by jury under 9 U.S.C. § 4.

December 8, 2020

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 09357**
Of Attorneys for Plaintiff
Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

**RESPONSE TO MOTION** – Page 29 of 30

## CERTIFICATE OF SERVICE

I certify that I caused this document to be served on the parties to this action through the CM/ECF system.

December 8, 2020

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000